UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ROBERT LEE WILDS and
CHANNING LEAVERTIS BYRD
      Plaintiffs,

-vs-

Case No. __6:12-CV-1806-ORL-31-KRS__

SEMINOLE COUNTY, a Political Subdivision
of the State of Florida, DONALD F. ESLINGER,
SEMINOLE COUNTY SHERIFF, in his
official capacity; DEPUTY ERIK DUCHARME
individually and his official capacity; DEPUTY
PAUL PRATT individually and in his official
capacity; DEPUTY CHRISTOPHER CLUTTER
individually and in his official capacity,
      Defendants.

**DEMAND FOR JURY TRIAL**

**COMPLAINT**
**INTRODUCTION, JURISDICTION, AND VENUE**

      Plaintiffs, ROBERT LEE WILDS ("WILDS") and CHANNING LEAVERTIS BYRD

("BYRD")(collectively "Plaintiffs"), through undersigned counsel, sue the Defendants, the

Seminole County Sheriff's Office, through the Sheriff, DONALD F. ESLINGER ("SHERIFF

ESLINGER"), in his official capacity; DEPUTY ERIK DUCHARME ("DUCHARME), in his

individual capacity; DEPUTY CHRISTOPHER CLUTTER ("CLUTTER"), in his individual

capacity; and DEPUTY PAUL PRATT ("PRATT"), in his individual capacity, and allege as

follows:

1. This is a civil rights action which arises from egregious and blatant acts of police misconduct
   committed by Seminole County Sheriffs Office deputies.

2. Plaintiffs Robert Wilds, a 29 year old black man, and Channing Byrd, a 30 year old black
   man, seek relief for the Defendants' violation of their rights secured by the Civil Rights Act

1

of 1871, 42 U.S.C. § 1983 and 1988; and the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitutions and for rights secured under the laws and Constitution of the State of Florida.

3. Plaintiffs seek compensation for the unconstitutional and tortuous conduct of deputy sheriffs who intentionally, willfully, knowingly, maliciously and wrongfully procured their arrest with full knowledge that they had not committed any crime, and wrongfully utilized firearms and discharged a Taser gun in procuring their arrests.

4. This action makes issue and alleges a violation of the United States Constitution including, but not limited to, a violation of the Fourth and Fourteenth Amendments which make illegal the unlawful arrest of persons without probable cause and the unnecessary and excessive use of force against persons during their arrest.

5. This Honorable Court has original jurisdiction over this action and the parties named herein pursuant to the provisions of 42 U.S.C. Sections 1983 and 1988; the United States Constitution; the provisions in 28 U.S.C. Sections 1331 and 1343, et.seq.; and the ancillary jurisdiction of this Court pursuant to 29 U.S.C. Section 1367 for all state law claims.

6. Plaintiffs further invoke the supplemental jurisdiction of this Court to adjudicate pendant state law claims pursuant to 28 U.S.C. Section 1367.

7. Venue is proper in this district under 28 U.S.C. Section 1391(b) in that all acts, omissions and practices described hereafter, giving rise to these claims all occurred in Orange County, Florida, and within the jurisdiction of the United States District Court in and for the Middle District of Florida.

8. Plaintiffs' claim for relief is predicated upon 42 U.S.C. Section 1983 and upon 42 U.S.C. Section 1988, which authorizes the award of attorney's fees and costs to a prevailing party in actions brought pursuant to 42 U.S.C. Section 1983.

9. Plaintiffs' claim for relief is also predicated upon State law for all claims arising from violations of State statutes and common law.

10. At all times material hereto, the acts, omissions, practices and other conduct of each Defendant were committed under color of state or local law.

11. At all times material hereto, the acts, omissions, practices and other conduct of Defendants Clutter, Ducharme and Pratt were committed within the course and scope of their employment for Defendant Sheriff Esliner.

## NOTICE OF CLAIM

12. Plaintiffs in furtherance of its state law causes of action filed a timely Notice of Claim in accordance with Florida Statute Section 768.28 against the Seminole County Sheriff's Office. Consequently, the causes of action contained herein will be amended once all conditions precedent to state law claims have been satisfied and/or waived.

## PARTIES

13. At all times material hereto, Plaintiff WILDS was an adult resident of Seminole County and a citizen of the State of Florida.

14. At all times material hereto, Plaintiff BYRD was an adult resident of Seminole County and a citizen of the State of Florida.

15. At all times material hereto, Defendant SHERIFF ESLINGER was and is a "person" subject to suit under 42 U.S.C. Section 1983. He is sued solely in his official capacity.

3

16. At all times material hereto, Defendant DUCHARME was a sheriff's deputy appointed by SHERIFF ESLINER, acting within the course and scope of said employment and under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or Seminole County. He is sued in his individual capacity.

17. At all times material hereto, Defendant PRATT was a sheriff's deputy appointed by SHERIFF ESLINER, acting within the course and scope of said employment and under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or Seminole County. He is sued in his individual capacity.

18. At all times material hereto, Defendant CLUTTER was a sheriff's deputy appointed by SHERIFF ESLINER, acting within the course and scope of said employment and under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or Seminole County. He is sued in his individual capacity.

19. At all times material hereto, Defendant SHERIFF ESLINGER, through his agents and employees, was responsible for the proper and efficient enforcement of the laws, regulations, policies, practices and procedures of such political entity; the laws and regulations of the State of Florida; and the Constitution of the United States.

20. Plaintiffs WILDS and BYRD have retained the services of undersigned counsel and is obligated to pay a reasonable attorney's fee for such services in pursuing the claims asserted herein.

## FACTS COMMON TO ALL COUNTS

21. On May 19, 2012, Plaintiffs WILDS and BYRD were assaulted, battered, and injured by Defendants CLUTTER, DUCHARME and PRATT.

4

22. On the night of May 19, 2012, Plaintiffs Wilds and Byrd were traveling on Park Road, in Sanford, Seminole County, Florida, in Mr. Wilds' Chevrolet Impala.

23. Mr. Wilds' fiancé was in another vehicle closely following behind Mr. Wilds' vehicle.

24. Upon information and belief, Deputy Ducharme and Deputy Clutter fabricated and falsified their observations that both Mr. Wilds and Mr. Byrd were not secured in seat belts, as Mr. Wilds' vehicle passed by the deputies' patrol vehicles.

25. Upon information and belief, the deputies' allegations that Mr. Wilds and Mr. Byrd were not secured in seat belts were found to be untruthful and fraudulent.

26. Ducharme and Clutter both made u-turns to maneuver their vehicles behind Wilds' vehicle to conduct a traffic stop. Wilds or Byrd were not observed committing any other crimes or unlawful acts which would give rise to probable cause or reasonable suspicion to conduct a stop.

27. Deputy Ducharme and Clutter operated their patrol vehicles at high speeds, abruptly accelerating through traffic, endangering Mr. Wilds, Mr. Byrd, Mr. Wilds' fiancé, and other traffic traveling on SR 600 in Sanford, Seminole County, Florida.

28. Once deputy Ducharme activated the emergency light bar on his patrol vehicle, Mr. Wilds immediately applied his brakes and attempted to safely maneuver his vehicle to right-hand lane or shoulder area to safely stop for the deputies.

29. Mr. Wilds was initially prevented from stopping in the right-hand lane of travel because Deputy Clutter irrationally and prematurely maneuvered his patrol vehicle in a reckless manner as if attempting a PIT maneuver. Deputy Clutter abruptly accelerated his vehicle and maneuvered in front of Mr. Wilds' vehicle as Mr. Wilds was finally able to safely stop his vehicle.

30. It took Mr. Wilds approximately six seconds from the time Deputy Ducharme activated his emergency lights to stop his vehicle in the right-hand lane of travel.

31. Once Mr. Wilds' vehicle came to a complete stop within six seconds, Deputy Clutter emerged from his patrol vehicle located in front of Mr. Wilds, and Deputy Ducharme from his patrol vehicle parked behind Mr. Wilds. Both deputies immediately had their firearms drawn and pointed them at Mr. Wilds and Mr. Byrd.

32. At gun point, both deputies yelled out commands and expletives at Mr. Wilds and Mr. Byrd.

33. Mr. Wilds and Mr. Byrd were ordered to put their hands up, stick their hands out of the window, and turn the car off at the same time, while still being held at gunpoint.

34. The deputies, without any resistance or non-compliance from Mr. Wilds or Mr. Byrd, radioed for assistance falsely advising that Mr. Wilds and Mr. Byrd were being non-compliant with their verbal commands.

35. Deputy Ducharme approached the driver-side vehicle, aiming his firearm directly at Mr. Wilds at point-blank range and opening the drivers-side door of Mr. Wilds' vehicle. Deputy Clutter went back to his patrol car, retrieved a shotgun and pointed the shotgun at Mr. Wilds and Mr. Byrd from in front of Mr. Wilds' vehicle. Deputy Clutter then drew his taser and pointed both the shotgun and Taser weapon at Mr. Wilds simultaneously.

36. Deputy Pratt arrived on scene as both Mr. Wilds and Mr. Byrd were being held at gun point and approached the vehicle, first opening the rear passenger-side door of the vehicle because he was unable to see inside the vehicle. Upon realizing there were no passengers in the rear of the car, Deputy Pratt opened Mr. Byrd's door and dragged him out of the vehicle, slamming him to the ground face-down and handcuffing him.

37. Due to the reckless and careless manner in which Deputy Clutter and Deputy Ducharme brandished their lethal firearms, Deputy Pratt was in the line of fire several times while retrieving and dragging Mr. Byrd out of the vehicle.

38. Without provocation or justification, Deputy Clutter fired his Taser weapon, while still aiming his shotgun, at Mr. Wilds. Mr. Wilds was not being noncompliant or resistant to the deputies' verbal commands.

39. Mr. Wilds was dragged from the vehicle face-down by an arm bar take down, slammed into the pavement and kneed in the back by Deputy Ducharme, as he was handcuffed.

40. The crimes Mr. Wilds and Mr. Byrd were accused of, failure to wear a seat belt, is not a serious offense.

41. Neither Mr. Wilds or Mr. Byrd posed a serious threat to Defendants Clutter, Ducharme, and/or Pratt or any other person present. Mr. Wilds and Mr. Byrd did not have any weapons, were not acting in a violent manner, and were not placing anyone in any form of danger, including Defendants.

42. Mr. Wilds and Mr. Byrd were in no way trying to escape or flee the area.

43. Adding further insult to injury, Mr. Wilds was arrested, treated for wounds and transported to the Seminole County Jail, charged with resisting an officer with violence under Florida Statute 843.01.

44. Mr. Byrd was also arrested, treated and transported to Seminole County Jail charged with resisting an officer without violence under Florida Statute 843.02.

45. Mr. Wilds and Mr. Byrd both spent the night in jail. On September 5, 2012, approximately four months after the conduct set forth above, charges against Mr. Wilds were terminated by

Nolle Prosequi entered by the Office of the State Attorney. No charges were re-filed against him.

46. On September 12, 2012, approximately four months after the conduct set forth above, charges against Mr. Byrd were also terminated by Nolle Prosequi entered by the Office of the State Attorney. No charges were re-filed against him.

47. These charges were filed, pursued and continued without probable cause and with malicious intent of injuring Plaintiff Wilds and Plaintiff Byrd, and with the purpose of either the intentional or negligent infliction emotional distress on both Plaintiff Wilds and/or Plaintiff Byrd.

48. Plaintiff Wilds incurred attorney's fees and costs stemming from his retention of legal counsel to contest the frivolous criminal charges. He additionally suffered injuries in the form of mental anguish, public humiliation and other financial damages relating to his employment and ability to earn a living.

49. Plaintiff Byrd, although being represented by the Public Defender for Seminole County, also incurred fees and costs stemming from his contention of the frivolous criminal charges. He additionally suffered injuries in the form of mental anguish, public humiliation and other financial damages relating to his employment and ability to earn a living.

50. Deputies Ducharme and Clutter were investigated internally after the incident on May 19, 2012, and were terminated as result of that internal investigation.

51. Plaintiffs allege that the criminal charges against Plaintiff Wilds and Plaintiff Byrd were false and frivolous and made for the sole purpose of concealing wrongful acts and conduct of the above-referenced members of law enforcement, specifically including Ducharme and Clutter, and to avoid having to account for their grotesque acts.

## COUNT I: CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983 (WILDS' INDIVIDUAL AND OFFICIAL CAPACITY EXCESSIVE FORCE CLAIM AGAINST CLUTTER and DUCHARME)

52. Plaintiffs repeat and reallege each and every allegation set forth above paragraphs numbered "1" through "51" inclusive with the same force and effect as if more fully set forth at length herein.

53. At all times material hereto, Defendants CLUTTER and/or DUCHARME had a legal duty to use only that amount and degree of force in the apprehension of suspects as was reasonable under the circumstances, for proper and efficient arrest, supervision and control of such persons.

54. Defendant Clutter aimed his handgun, shotgun and Taser gun and Plaintiff Wilds and shocked Plaintiff Wilds with his Taser gun without any cause, and without the legal right to use any force against him, as there were no lawful grounds for Clutter and/or Ducharme to seize Wilds at all.

55. Defendant Ducharme aimed his handgun at Plaintiff Byrd without any cause, and without the legal right to use any force against him, as there were no lawful grounds for Clutter and/or Ducharme to seize Byrd at all.

56. Even assuming arguendo that Clutter and/or Ducharme had cause to take Plaintiff Wilds into custody, the force he used was grossly excessive, as he could have easily seized Plaintiff Wilds without causing him any harm. Plaintiff Wilds posed no threat to Clutter, and Clutter could have taken him into custody without using any form of a weapon.

57. Holding Plaintiff Wilds at gunpoint, using a handgun and later aiming a shotgun and Taser gun at Plaintiff Wilds simultaneously, was a blatant use of excessive force.

58. By their actions, Defendants Clutter and/or Ducharme deprived Plaintiff Wilds of the clearly established right to be free from force which was excessive under the circumstances, in violation of Plaintiff Wilds' rights under the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution.

59. As a direct, proximate and foreseeable result of Defendants Clutter and/or Ducharme's actions, Plaintiff Wilds suffered constitutional deprivations, bodily injuries and resulting pain and suffering, mental anguish, loss of ability to enjoy life, loss of potential earning, public humiliation, and other injuries relating to this incident. These injuries and losses are permanent and continuing, and Plaintiff Wilds will suffer such losses in the future.


WHEREFORE, Plaintiff ROBERT WILDS prays that this Honorable Court grant the following relief on his civil rights claim brought pursuant to 42 U.S.C. § 1983 and 1988:

A.  Judgment for compensatory damages against Defendant Clutter and/or Defendant Ducharme;

B.  Judgment for punitive damages against Defendant Clutter and/or Defendant Ducharme;

C.  Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and expenses of this civil rights action;

D.  Judgment for pre-judgment interest on attorney's fees for delay in payment;

E.  A trial by jury on all issues so triable; and

F.  Such other and further relief that this Court may deem just, proper and appropriate.


## COUNT II: CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983 (BYRD'S INDIVIDUAL AND OFFICIAL CAPACITY EXCESSIVE FORCE CLAIM AGAINST CLUTTER, DUCHARME AND PRATT)

60. Plaintiffs repeat and reallege each and every allegation set forth above paragraphs numbered "1" through "51" inclusive with the same force and effect as if more fully set forth at length herein.

61. At all times material hereto, Defendants CLUTTER, DUCHARME, and/or PRATT had a legal duty to use only that amount and degree of force in the apprehension of suspects as was reasonable under the circumstances, for proper and efficient arrest, supervision and control of such persons.

62. Defendant Clutter aimed his handgun, shotgun, and Taser gun at Plaintiff Byrd without any cause, and without the legal right to use any force against him, as there were no lawful grounds for Clutter, Ducharme and/or Pratt to seize Byrd at all.

63. Defendant Ducharme aimed his handgun at Plaintiff Byrd without any cause, and without the legal right to use any force against him, as there were no lawful grounds for Clutter and/or Ducharme to seize Byrd at all.

64. Even assuming arguendo that Clutter Ducharme and/or Pratt had cause to take Plaintiff Byrd into custody, the force he used was grossly excessive, as he could have easily seized Plaintiff Byrd without causing him any harm. Plaintiff Byrd posed no threat to Clutter, Ducharme and/or Pratt, and Clutter, Ducharme and/or Pratt could have taken him into custody without using any form of a weapon.

65. Holding Plaintiff Byrd at gunpoint, using a handgun and later aiming a shotgun and Taser gun at Plaintiff Byrd simultaneously, was a blatant use of excessive force.

66. Defendant Pratt grabbed Plaintiff Byrd and dragged him from the vehicle, slamming him face-down into the ground without any cause, and without the legal right to use any force against him, as there were no lawful grounds for Pratt to seize Byrd at all.

67. By their actions, Defendants Clutter, Ducharme and/or Pratt deprived Plaintiff Byrd of the clearly established right to be free from force which was excessive under the circumstances, in violation of Plaintiff Byrd's rights under the Fourth, Eighth and Fourteenth Amendments to the U.S. Constitution.

68. As a direct, proximate and foreseeable result of Defendants Clutter, Ducharme and/or Pratt's actions, Plaintiff Byrd suffered constitutional deprivations, bodily injuries and resulting pain and suffering, mental anguish, loss of ability to enjoy life, loss of potential earning, public humiliation, and other injuries relating to this incident. These injuries and losses are permanent and continuing, and Plaintiff Byrd will suffer such losses in the future.

WHEREFORE, Plaintiff CHANNING BYRD prays that this Honorable Court grant the following relief on his civil rights claim brought pursuant to 42 U.S.C. § 1983 and 1988:

A. Judgment for compensatory damages against Defendants Clutter, Ducharme and/or Pratt;

B. Judgment for punitive damages against Defendants Clutter, Ducharme and/or Pratt;

C. Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and expenses of this civil rights action;

D. Judgment for pre-judgment interest on attorney's fees for delay in payment;

E. A trial by jury on all issues so triable; and

F. Such other and further relief that this Court may deem just, proper and appropriate.

## COUNT III: CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983 (WILDS' OFFICIAL CAPACITY EXCESSIVE FORCE CLAIM AGAINST SHERIFF ESLINGER)

69. Plaintiffs repeat and reallege each and every allegation set forth above paragraphs numbered "1" through "51" inclusive with the same force and effect as if more fully set forth at length herein.

70. At all times material hereto, Defendant SHERIFF ESLINGER had a duty to adopt and implement rules and procedures to ensure that his deputies used a reasonable amount and degree of force in the apprehension of suspects.

71. Defendant Sheriff Eslinger's failure to adopt and implement adequate policies regarding his deputies' use of force resulted in the blatant use of excessive force by Defendant CLUTTER against Plaintiff WILDS as described in paragraphs 1 through 46.

72. At all times material hereto, Defendant Sheriff Eslinger knew, and it was foreseeable, that persons being arrested by his deputies might be subjected to use of force through his deputies' use of the Taser gun, firearms or other use of physical force.

73. At all times material hereto, Defendant Sheriff Eslinger knew, and it was foreseeable, that an adequate policy for the use of force was necessary in order to avoid repeated use of excessive force by his deputies in such circumstances.

74. At all times material hereto, Defendant Sheriff Eslinger was aware that the failure to establish a custom, policy and practice relating to the tracking and auditing of deputies' use of the Taser gun and other use of physical force and the disciplining of deputies who use excessive force would result in serious injury to members of the general public.

75. At all times material hereto, Defendant Sheriff Eslinger was aware that the failure to establish a custom, policy and practice relating to the adequate training and supervision of deputies would result in serious injury to members of the general public.

76. At all times material hereto, Defendant Sheriff Eslinger was deliberately indifferent to the known probability that instances of excessive force through use of the Taser gun or other use of physical force would occur, such as in the case of Plaintiff Wilds, by failing or refusing to establish a use of force policy which provides for adequate tracking of Taser gun usage by deputies.

77. Defendant, Sheriff Eslinger had a policy, practice or custom of failing to adequately supervise and discipline deputies.

78. Defendant, Sheriff Eslinger, failed to ensure that deputies did not apply unreasonable force in the use of Taser guns and allowed deputies to deploy Tasers on subjects where the use of such force was unnecessary and excessive.

79. At all times material hereto, Defendant Sheriff Eslinger knew, and it was foreseeable, that a policy of adequately supervising and auditing the uses of force by deputies was necessary in order to avoid repeated use of excessive force by deputies.

80. At all times material hereto, Defendant Sheriff Eslinger was aware that the failure to establish a policy of adequately supervising and auditing the uses of force by deputies would result in repeated instances of excessive force resulting in serious injury.

81. At all times material hereto, Defendant Sheriff Eslinger was deliberately indifferent to the known probability that instances of force by deputies would occur, such as in the case of Plaintiff Wilds, by failing or refusing to establish a policy of adequately supervising and auditing the uses of force by deputies.

82. As a direct, proximate and foreseeable result of Defendant Sheriff Eslinger's policies, customs and practices, Plaintiff Wilds has suffered constitutional deprivations, bodily injuries and resulting pain and suffering, mental anguish, loss of ability to enjoy life, expenses of

legal counsel, loss of earnings, and other injuries and losses. These injuries and losses are
permanent and continuing, and Plaintiff Wilds will suffer such losses in the future.

83. Defendant Sheriff Eslinger acted with deliberate indifference in causing the aforesaid
constitutional violation by Defendant Clutter to occur, as follows:

a) Defendant Sheriff Eslinger failed to adequately monitor and evaluate the performance of his
deputies, including Defendant Clutter, including his use of force applications, in deliberate
indifference and reckless disregard to persons in custody, including Plaintiff Wilds;

b) Defendant Sheriff Eslinger failed to adequately supervise his deputies, indeliberate
indifference and reckless disregard to persons who came into contact with them, including
Plaintiff Wilds;

c) Defendant Sheriff Eslinger had and has a policy, custom and practice of allowing his deputies,
including Defendant Clutter, to use excessive and/or unreasonable force without fear of
discipline, thereby creating an atmosphere where such behavior is accepted, approved and
ratified, in reckless disregard and deliberate indifference to the health and welfare of persons in
his custody, including Plaintiff Wilds.

84. The aforementioned actions committed by Defendant Clutter was proximately caused by the
de facto policies, customs, and practices of Defendant Sheriff Eslinger, the failure to
establish proper policies, customs and practices, his failure to adequately supervise and
monitor his deputies, and his ratifications of deputies' use of excessive force, as alleged in
paragraphs 1 through 51.

85. The aforementioned policies, customs, practices and omissions of Defendant Sheriff
Eslinger, alleged in paragraphs 1 through 51, were the underlying cause of Plaintiff Wilds'
injuries and damages.

WHEREFORE, Plaintiff ROBERT WILDS prays that this Honorable Court grant the following relief on his civil rights claim brought pursuant to 42 U.S.C. § 1983 and 1988:

A. Judgment for compensatory damages against Defendant Sheriff Eslinger;

B. Judgment for punitive damages against Defendant Sheriff Eslinger;

C. Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and expenses of this civil rights action;

D. Judgment for pre-judgment interest on all economic losses, including judgment for damage due to the lack of insurability of Plaintiff; and pre-judgment interest on attorney's fees for delay in payment;

E. A trial by jury on all issues so triable; and

F. Such other and further relief that this Court may deem just, proper and appropriate.

## COUNT IV: CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983 (BYRD'S OFFICIAL CAPACITY EXCESSIVE FORCE CLAIM AGAINST SHERIFF ESLINGER)

86. Plaintiffs repeat and reallege each and every allegation set forth above paragraphs numbered "1" through "51" inclusive with the same force and effect as if more fully set forth at length herein.

87. At all times material hereto, Defendant SHERIFF ESLINGER had a duty to adopt and implement rules and procedures to ensure that his deputies used a reasonable amount and degree of force in the apprehension of suspects.

88. Defendant Sheriff Eslinger's failure to adopt and implement adequate policies regarding his deputies' use of force resulted in the blatant use of excessive force by Defendant CLUTTER against Plaintiff BYRD as described in paragraphs 1 through 46.

89. At all times material hereto, Defendant Sheriff Eslinger knew, and it was foreseeable, that persons being arrested by his deputies might be subjected to use of force through his deputies' use of the Taser gun, firearms or other use of physical force.

90. At all times material hereto, Defendant Sheriff Eslinger knew, and it was foreseeable, that an adequate policy for the use of force was necessary in order to avoid repeated use of excessive force by his deputies in such circumstances.

91. At all times material hereto, Defendant Sheriff Eslinger was aware that the failure to establish a custom, policy and practice relating to the tracking and auditing of deputies' use of the Taser gun and other use of physical force and the disciplining of deputies who use excessive force would result in serious injury to members of the general public.

92. At all times material hereto, Defendant Sheriff Eslinger was aware that the failure to establish a custom, policy and practice relating to the adequate training and supervision of deputies would result in serious injury to members of the general public.

93. At all times material hereto, Defendant Sheriff Eslinger was deliberately indifferent to the known probability that instances of excessive force through use of the Taser gun or other use of physical force would occur, such as in the case of Plaintiff Byrd, by failing or refusing to establish a use of force policy which provides for adequate tracking of Taser gun usage by deputies.

94. Defendant Sheriff Eslinger had a policy, practice or custom of failing to adequately supervise and discipline deputies.

95. At all times material hereto, Defendant Sheriff Eslinger knew, and it was foreseeable, that a policy of adequately supervising and auditing the uses of force by deputies was necessary in order to avoid repeated use of excessive force by deputies.

96. At all times material hereto, Defendant Sheriff Eslinger was aware that the failure to establish a policy of adequately supervising and auditing the uses of force by deputies would result in repeated instances of excessive force resulting in serious injury.

97. At all times material hereto, Defendant Sheriff Eslinger was deliberately indifferent to the known probability that instances of force by deputies would occur, such as in the case of Plaintiff Byrd, by failing or refusing to establish a policy of adequately supervising and auditing the uses of force by deputies.

98. As a direct, proximate and foreseeable result of Defendant Sheriff Eslinger's policies, customs and practices, Plaintiff Byrd has suffered constitutional deprivations, bodily injuries and resulting pain and suffering, mental anguish, loss of ability to enjoy life, costs and expenses of litigation, loss of earnings, and other injuries and losses. These injuries and losses are permanent and continuing, and Plaintiff Byrd will suffer such losses in the future.

99. Defendant Sheriff Eslinger acted with deliberate indifference in causing the aforesaid constitutional violation by Defendant Clutter to occur, as follows:

a) Defendant Sheriff Eslinger failed to adequately monitor and evaluate the performance of his deputies, including Defendant Clutter, including his use of force applications, in deliberate indifference and reckless disregard to persons in custody, including Plaintiff Byrd;

b) Defendant Sheriff Eslinger failed to adequately supervise his deputies, in deliberate indifference and reckless disregard to persons who came into contact with them, including Plaintiff Byrd;

c) Defendant Sheriff Eslinger had and has a policy, custom and practice of allowing his deputies, including Defendant Clutter, to use excessive and/or unreasonable force without fear of discipline, thereby creating an atmosphere where such behavior is accepted, approved and

18

ratified, in reckless disregard and deliberate indifference to the health and welfare of persons in his custody, including Plaintiff Byrd.

100.    The aforementioned actions committed by Defendant Clutter was proximately caused by the de facto policies, customs, and practices of Defendant Sheriff Eslinger, the failure to establish proper policies, customs and practices, his failure to adequately supervise and monitor his deputies, and his ratifications of deputies' use of excessive force, as alleged in paragraphs 1 through 46.

101.    The aforementioned policies, customs, practices and omissions of Defendant Sheriff Eslinger, alleged in paragraphs 1 through 46, were the underlying cause of Plaintiff Byrd's injuries and damages.

WHEREFORE, Plaintiff CHANNING BYRD prays that this Honorable Court grant the following relief on his civil rights claim brought pursuant to 42 U.S.C. § 1983 and 1988:

A. Judgment for compensatory damages against Defendant Sheriff Eslinger;

B. Judgment for punitive damages against Defendant Sheriff Eslinger;

C. Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and expenses of this civil rights action;

D. Judgment for pre-judgment interest on all economic losses, including judgment for damage due to the lack of insurability of Plaintiff; and pre-judgment interest on attorney's fees for delay in payment;

E. A trial by jury on all issues so triable; and

F. Such other and further relief that this Court may deem just, proper and appropriate.

**COUNT V: CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983 (WILDS' INDIVIDUAL AND OFFICIAL CAPACITY FALSE ARREST AND IMPRISONMENT CLAIM AGAINST CLUTTER AND DUCHARME)**

102.    Plaintiffs repeat and reallege each and every allegation set forth above paragraphs

numbered "1" through "51" inclusive with the same force and effect as if more fully set forth

at length herein.

103.    At all times material hereto, Defendants CLUTTER and/or DUCHARME had a legal

duty not to seize or arrest citizens without probable cause that they have committed a crime.

104.    On May 19, 2012, Defendants Clutter and/or Ducharme intentionally seized and arrested

Plaintiff WILDS without probable cause or arguable cause.

105.    The charges alleged by Defendants Clutter and/or Ducharme against Plaintiff Wilds,

resisting a law enforcement officer with violence and failure to wear a seat belt, were

terminated by the State Attorney's office on September 5, 2012, almost four months after

Wilds' arrest.

106.    By their actions, Defendants Clutter and/or Ducharme deprived Plaintiff Wilds of the

clearly established right to be free from false arrest without probable cause and false

imprisonment, in violation of Plaintiff Wilds' rights under the Fourth and Fourteenth

Amendments to the U.S. Constitution.

107.    As a direct, proximate and foreseeable result of Defendants Clutter and/or Ducharme's

actions, Plaintiff Wilds has suffered bodily injuries and resulting pain and suffering, mental

anguish, loss of ability to enjoy life, costs and expenses of litigation, loss of earnings, and

other injuries and losses. These injuries and losses are permanent and continuing, and

Plaintiff Wilds will suffer such losses in the future.

WHEREFORE, Plaintiff ROBERT WILDS prays that this Honorable Court grant the

following relief on his civil rights claim brought pursuant to 42 U.S.C. § 1983 and 1988:

A. Judgment for compensatory damages against Defendants Clutter, Ducharme and/or Eslinger;

B. Judgment for punitive damages against Defendants Clutter, Ducharme and/or Eslinger;

C. Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and expenses of this civil rights action;

D. Judgment for pre-judgment interest on all economic losses, including judgment for damage due to the lack of insurability of Plaintiff; and pre-judgment interest on attorney's fees for delay in payment;

E. A trial by jury on all issues so triable; and

F. Such other and further relief that this Court may deem just, proper and appropriate.

## COUNT VI: CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983 (BYRD'S INDIVIDUAL AND OFFICIAL CAPACITY FALSE ARREST AND IMPRISONMENT CLAIM AGAINST CLUTTER, DUCHARME AND PRATT)

108.    Plaintiffs repeat and reallege each and every allegation set forth above paragraphs numbered "1" through "51" inclusive with the same force and effect as if more fully set forth at length herein.

109.    At all times material hereto, Defendants CLUTTER, DUCHARME and/or PRATT had a legal duty not to seize or arrest citizens without probable cause that they have committed a crime.

110.    On May 19, 2012, Defendants Clutter, Ducharme and/or Pratt intentionally seized and arrested Plaintiff BYRD without probable cause or arguable cause.

111.    The charges alleged by Defendants Clutter, Ducharme and/or Pratt against Plaintiff Byrd, resisting a law enforcement officer without violence and failure to wear a seat belt, were terminated by the State Attorney's office on September 12, 2012, almost four months after Byrd's arrest.

112.   By their actions, Defendants Clutter, Ducharme and/or Pratt deprived Plaintiff Byrd of the clearly established right to be free from false arrest without probable cause and false imprisonment, in violation of Plaintiff Byrd's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.

113.   As a direct, proximate and foreseeable result of Defendants Clutter, Ducharme and/or Byrd's actions, Plaintiff Byrd has suffered bodily injuries and resulting pain and suffering, mental anguish, loss of ability to enjoy life, costs and expenses of litigation, loss of earnings, and other injuries and losses. These injuries and losses are permanent and continuing, and Plaintiff Byrd will suffer such losses in the future.

WHEREFORE, Plaintiff CHANNING BYRD prays that this Honorable Court grant the following relief on his civil rights claim brought pursuant to 42 U.S.C. § 1983 and 1988:

A. Judgment for compensatory damages against Defendants Clutter, Ducharme, Pratt and/or Eslinger;

B. Judgment for punitive damages against Defendants Clutter, Ducharme, Pratt and/or Eslinger;

C. Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and expenses of this civil rights action;

D. Judgment for pre-judgment interest on all economic losses, including judgment for damage due to the lack of insurability of Plaintiff; and pre-judgment interest on attorney's fees for delay in payment;

E. A trial by jury on all issues so triable; and

F. Such other and further relief that this Court may deem just, proper and appropriate.

## COUNT VII: 42 U.S.C. § 1983 CONSPIRACY ACTION

114.    Plaintiffs repeat and reallege each and every allegation set forth above paragraphs numbered "1" through "51" inclusive with the same force and effect as if more fully set forth at length herein.

115.    The individual defendants, under color of law, conspired with each other, and with others, reached a mutual understanding, and acted to undertake a course of conduct to injure, oppress, threaten, and intimidate Robert Wilds and Channing Byrd in the free exercise and enjoyment of the rights and privileges and equal protection of the law secured to them by the Constitution, including the rights: to be free from the intentional use of unreasonable force; to be free from unreasonable searches and seizures; to associate and speak freely; to have access to and seek redress in the courts; and to be free from false arrest, false imprisonment.

116.    The Seminole County Sheriffs Office, through its agents, was a willful participant in joint action with officers acting under color of law. It is believed that the agents, officers, and members of the Seminole County Sheriffs Office participated in the conspiracy to further the purpose and goals of the organization, including the goal of maintaining the "code of silence."

117.    It was part of the conspiracy that the defendants Clutter and Ducharme did, among other acts, physically assault Mr. Wilds and Mr. Byrd while conducting a traffic stop without just, reasonable or probable cause.

118.    In furtherance of the conspiracy and to cover up the acts of brutality, defendants engaged in the following:

a.    Falsely arrested and imprisoned Mr. Wilds and Mr. Byrd;

b.    Fabricated and contrived the criminal charge lodged against Mr. Wilds and Mr. Byrd;

c. Submitted false police reports, statements, and/or testimony to support and corroborate the fabricated charges lodged against Mr. Wilds and Mr. Byrd and to insulate themselves from administrative and criminal sanctions.

WHEREFORE, Plaintiffs ROBERT WILDS and CHANNING BYRD prays that this Honorable Court grant the following relief on his civil rights claim brought pursuant to 42 U.S.C. § 1983 and 1988:

A. Judgment for compensatory damages against Defendants Clutter, Ducharme, Pratt and/or Eslinger;

B. Judgment for punitive damages against Defendant Defendants Clutter, Ducharme, Pratt and/or Eslinger;

C. Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and expenses of this civil rights action;

D. Judgment for pre-judgment interest on all economic losses, including judgment for damage due to the lack of insurability of Plaintiff; and pre-judgment interest on attorney's fees for delay in payment;

E. A trial by jury on all issues so triable; and

F. Such other and further relief that this Court may deem just, proper and appropriate.

## COUNT VII: 42 U.S.C. § 1983 FAILURE TO INTERCEDE ACTION (AGAINST DEFENDANT PRATT)

119.    Plaintiffs repeat and reallege each and every allegation set forth above paragraphs numbered "1" through "51" inclusive with the same force and effect as if more fully set forth at length herein.

120.    By their conduct and under color of state law, it is believed Defendant PRATT had

opportunities to intercede on behalf of Mr. Wilds and Mr. Bird to prevent the excessive use

of force but due to his intentional conduct or deliberate indifference declined or refused to

due so.

WHEREFORE, Plaintiffs ROBERT WILDS and CHANNING BYRD prays that this

Honorable Court grant the following relief on his civil rights claim brought pursuant to 42 U.S.C.

§ 1983 and 1988:

A. Judgment for compensatory damages against Defendant Pratt;

B. Judgment for punitive damages against Defendant Pratt;

C. Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and

expenses of this civil rights action;

D. Judgment for pre-judgment interest on all economic losses, including judgment for damage

due to the lack of insurability of Plaintiff; and pre-judgment interest on attorney's fees for delay

in payment;

E. A trial by jury on all issues so triable; and

F. Such other and further relief that this Court may deem just, proper and appropriate.


**COUNT VIII: CONSTITUTIONAL DEPRIVATION DUE TO NEGLIGENCE OF THE
SEMINOLE COUNTY SHERIFF, ESLINGER, IN THE HIRING, TRAINING,
SUPERVISION, AND RETENTION OF DEPUTIES CLUTTER, DUCHARME AND
PRATT**

121.    Plaintiffs repeat and reallege each and every allegation set forth above paragraphs

numbered "1" through "51" inclusive with the same force and effect as if more fully set forth

at length herein.

122.   The Seminole County Sheriffs Office negligently hired, trained, supervised, and/or retained Deputy Clutter.

123.   The Seminole County Sheriffs Office negligently hired, trained, supervised, and/or retained Deputy Ducharme.

124.   The Seminole County Sheriffs Office negligently hired, trained, supervised, and/or retained Deputy Pratt.

125.   The negligent hiring, training, supervision, and/or retention of each of these deputies by the Seminole County Sheriffs Office was the proximate cause of the constitutional deprivations, injuries and damages suffered by Plaintiffs Robert Wilds and Channing Byrd described above.

WHEREFORE, Plaintiffs ROBERT WILDS and CHANNING BYRD prays that this Honorable Court grant the following relief on this cause of action:

A. Judgment for compensatory damages against Defendant Eslinger;

B. Judgment for punitive damages against Defendant Eslinger;

C. Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and expenses of this civil rights action;

D. Judgment for pre-judgment interest on all economic losses, including judgment for damage due to the lack of insurability of Plaintiff; and pre-judgment interest on attorney's fees for delay in payment;

E. A trial by jury on all issues so triable; and

F. Such other and further relief that this Court may deem just, proper and appropriate.

## COUNT IX: CONSTITUTIONAL DEPRIVATION DUE TO FAILURE TO TRAIN AGAINST SEMINOLE COUNTY SHERIFF ESLINGER

126. Plaintiffs repeat and reallege each and every allegation set forth above paragraphs numbered "1" through "51" inclusive with the same force and effect as if more fully set forth at length herein.

127. Defendant Sheriff ESLINGER knowingly, recklessly, and with deliberate indifference failed to adequately instruct, train, and supervise Deputies Clutter, Ducharme, and Pratt, and other SCSO deputies in the proper use of Taser guns. This failure to train included:

a) Failing to train deputies to recognize that the Taser Gun should not be applied to certain men or women who may suffer from heart disease or other medical conditions;

b) Failing to train deputies to recognize that the Taser Gun should be applied only when individuals are resisting arrest; and

c) Failing to train deputies to recognize that the Taser Gun should not be used wantonly for mere deputy pleasure, as the deputies did; that wanton use is demonstrated by Defendant Clutter who tasered Plaintiff Robert Wilds without cause, provocation, or legal justification.

128. The Defendant Sheriff Eslinger, by failing to adequately instruct, train, supervise and control his deputies directly and proximately caused the injuries and damages suffered by Plaintiffs.

129. The Defendant Seminole County Sheriffs Office, by failing to adequately instruct, train, supervise and control his deputies, directly and proximately caused the deprivation of Robert Wilds and Channing Byrd's constitutionally protected rights, as elucidated above.

130. All the failures addressed in the instant count resulted from the official policies, procedures and customs of the Defendant Seminole County Sheriffs Office.

131.    The official policies, procedures, and customs of the Defendant Seminole County

Sheriffs Office directly and proximately caused the constitutional deprivations, injuries and

damages suffered by Plaintiffs Robert Wilds and Channing Byrd described above.

WHEREFORE, Plaintiffs ROBERT WILDS and CHANNING BYRD prays that this

Honorable Court grant the following relief on this cause of action:

A. Judgment for compensatory damages against Defendant Eslinger;

B. Judgment for punitive damages against Defendant Eslinger;

C. Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and

expenses of this civil rights action;

D. Judgment for pre-judgment interest on all economic losses, including judgment for damage

due to the lack of insurability of Plaintiff; and pre-judgment interest on attorney's fees for delay

in payment;

E. A trial by jury on all issues so triable; and

F. Such other and further relief that this Court may deem just, proper and appropriate.


## COUNT X: FALSE POLICE REPORTS CLAIM (AGAINST AGAINST CLUTTER, DUCHARME AND ESLINGER)

132.    Plaintiffs repeat and reallege each and every allegation set forth above paragraphs

numbered "1" through "51" inclusive with the same force and effect as if more fully set forth

at length herein.

133.    The acts of Deputies CLUTTER and DUCHARME in filing false reports willfully and

falsely reporting that Plaintiffs WILDS and BYRD had committed acts that they had not

committed and that they had committed crimes that they had not committed, and omitting

material information that the Office of the State Attorney should have considered in

determining whether to file charges against the Plaintiffs, intending to insulate themselves
from administrative and/or criminal sanctions for their wrongful conduct.

WHEREFORE, Plaintiffs ROBERT WILDS and CHANNING BYRD prays that this
Honorable Court grant the following relief on this cause of action:

A. Judgment for compensatory damages against Defendants Clutter, Ducharme and/or Eslinger;

B. Judgment for punitive damages against Defendant Clutter, Ducharme and/or Eslinger;

C. Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and
expenses of this civil rights action;

D. Judgment for pre-judgment interest on all economic losses, including judgment for damage
due to the lack of insurability of Plaintiff; and pre-judgment interest on attorney's fees for delay
in payment;

E. A trial by jury on all issues so triable; and

F. Such other and further relief that this Court may deem just, proper and appropriate.

## DAMAGES

134.    Plaintiffs repeat and reallege each and every allegation set forth above paragraphs
numbered "1" through "51" inclusive with the same force and effect as if more fully set forth
at length herein.

135.    The actions of all Defendants violated the following clearly established and well-settled
federal constitutional rights of Plaintiff, of which a reasonable person would have known:

a.      Freedom from the use of excessive, deadly, unreasonable, unjustified force that is wholly
disproportionate to any claimed need for force against his person;

b.      Substantive due process right to be free from arbitrary government conduct which shocks
the conscience and which is not tolerated in a free society.

136.   As a direct and proximate cause of the joint actions of all Defendants, Plaintiff WILDS

and BYRD'S constitutional rights were violated and they have suffered injuries and

damages.  Plaintiffs Wilds and Byrd seek recovery from the Defendants, both jointly and

severally, of all damages to which they may be entitled under both state and federal law for

the injuries and damages they sustained and which include, but are not limited to:

a.   Violation of their constitutional rights under the Fourth, Eighth and Fourteenth

Amendments to the United States Constitution;

b.   Severe physical injury, pain and suffering of a past, present and future nature;

c.   Emotional pain, suffering, mental anguish, public humiliation, loss of reputation, and

emotional trauma and suffering of a past, present and future nature;

d.   Loss of Enjoyment of Life of a past, present and future nature;

e.   Loss of Earning Capacity of a past, present and future nature;

f.   Punitive damages against the applicable Defendants;

g.   Pre and Post-Judgment Interest;

i.   Statutory and Discretionary Costs;

j.   Attorney's fees where permitted by 42 U.S.C. § 1988 or state law;

k.   A declaratory judgment that the acts and conduct herein were unconstitutional;

l.   All such further relied, both general and specific, to which they may be entitled under the

premises.

### PRAYERS FOR RELIEF

WHEREFORE, premises considered, WILDS and BYRD sue the Defendants, both

jointly and severally, for their injuries and damages and pray for a judgment against the

Defendants for *compensatory damages* in an amount to be determined by a jury as reasonable

and for all such further relief, both general and specific, to which he may be entitled under the premises. While WILDS and BYRD object to placing a specific sum of money on the value of their injuries and damages, to the extent that a specific demand for a sum of money is required to be requested in the Complaint, the amount *should not exceed* One Million ($1,000,000.00) Dollars.

WHEREFORE, premises considered, WILDS and BYRD sue the Defendants, both jointly and severally, and prays for a judgment against the applicable Defendants *for punitive damages* in an amount to be determined by a jury as reasonable and for all such further relief, both general and specific, to which he may be entitled under the premises. While WILDS and BYRD object to placing a specific sum of money on the value of his injuries and damages, to the extent that a specific demand for a sum of money is required to be requested in the Complaint, the amount *should not exceed* Five Hundred Thousand ($500,000.00) Dollars.

## JURY DEMAND

Plaintiffs, ROBERT WILDS AND CHANNING BYRD, hereby demand a trial by jury as to Counts I through X, and/or on all issues so triable.

Dated: November 29, 2012

Respectfully submitted,

SHAYAN H. MODARRES, ESQ.
Fla. Bar No.: 92493
THE MODARRES LAW FIRM
538 East Washington Street
Orlando, FL 32801
P: (407) 408-0494
F: (407) 418-1213
Shayan@ModarresLaw.com