**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ROBERT LEE WILDS and CHANNING LEAVERTIS BYRD,

Plaintiffs,

vs. Case No. 6:12-cv-1806-Orl-37KRS

SEMINOLE COUNTY; SEMINOLE COUNTY SHERIFF; ERIK DUCHARME; PAUL PRATT; and CHRISTOPHER CLUTTER,

Defendants.

---

**ORDER**

This cause is before the Court on the following:

1. Plaintiffs' Complaint (Doc. 1), filed November 29, 2012;
2. Defendant Ducharme's Motion to Dismiss Counts I, II, V, VI, VII and X of Plaintiffs' Complaint and Demand for Jury Trial (Doc. 16), filed January 31, 2013;
3. Defendant Sheriff Eslinger's Motion to Dismiss and Strike (Doc. 17), filed January 31, 2013;
4. Defendant Pratt's Motion to Dismiss (Doc. 18), filed February 1, 2013;
5. Plaintiffs' Response to Motion to Dismiss by Defendant Pratt (Doc. 19), filed February 8, 2013;
6. Plaintiffs' Response to Motion to Dismiss by Defendant Ducharme (Doc. 20), filed February 8, 2013;
7. Plaintiffs' Response to Motion to Dismiss and Strike by Defendant Eslinger

    (Doc. 21), filed February 8, 2013;

8. Defendant Christopher Clutter's Motion to Dismiss and Memorandum of Law (Doc. 35), filed March 6, 2013; and

9. Plaintiffs' Response to Motion to Dismiss by Defendant Clutter (Doc. 37), filed March 8, 2013.

Upon consideration, the Court hereby grants in part and denies in part Defendants' motions to dismiss, for the reasons set forth below.

**BACKGROUND**[1]

On May 19, 2012, Plaintiff Wilds was driving down Park Road in Seminole County in his Chevy Impala, along with his passenger Plaintiff Byrd. (Doc. 1, ¶ 22.) Deputies Ducharme and Clutter decided to pull over the vehicle based on an allegedly fabricated observation that Plaintiffs were not wearing their seatbelts. (*Id.* ¶ 24.) The deputies, in separate vehicles, maneuvered Plaintiffs' car over to the right-hand side of the road, allegedly in an unsafe manner. (*Id.* ¶¶ 27–29.) Deputy Clutter then parked in front of Plaintiffs' car and Deputy Ducharme parked behind. (*Id.* ¶ 31.)

At this point, Plaintiffs allege that the deputies drew their firearms and told Plaintiffs to put their hands up. (*Id.* ¶¶ 31–33.) The deputies radioed for backup, on the allegedly false basis that Plaintiffs were being noncompliant. (*Id.* ¶ 34.) Deputy Ducharme opened the driver-side door and pointed his firearm at Wilds. (*Id.* ¶ 35.) Deputy Clutter pointed a shotgun and a Taser at Plaintiffs while standing in front of Plaintiffs' vehicle. (*Id.*)

Deputy Pratt then arrived. (*Id.* ¶ 36.) He dragged Byrd out of the passenger-side

[1] The following factual allegations, drawn from the Complaint, are accepted as true for the purpose of considering the instant motions. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). The Court does not make findings of fact at this time.

of the car, slammed him to the ground, and handcuffed him. (*Id.*) Meanwhile, Deputy Clutter fired his Taser at Wilds. (*Id.* ¶ 38.) Deputy Ducharme then dragged Wilds out of the driver-side of the vehicle, slammed him to the ground, and handcuffed him while kneeing his back. (*Id.* ¶ 39.)

Plaintiffs were both arrested, jailed, and charged with resisting arrest. (*Id.* ¶¶ 43–44.) Wilds was also treated for wounds. (*Id.* ¶ 43.) The charges were later dropped. (*Id.* ¶¶ 45–46.) Deputies Ducharme and Clutter were internally investigated and terminated as a result of this incident. (*Id.* ¶ 50.)

Plaintiffs filed the eleven-count Complaint on November 29, 2012. (Doc. 1.) Though inartfully drafted, the Court gleans that the Complaint brings a variety of 42 U.S.C. § 1983 claims against Defendants under a multitude of theories. (*Id.*) Deputies Ducharme (Doc. 16), Pratt (Doc. 18), and Clutter (Doc. 35) each moved to dismiss the claims against them. The Sheriff also moved to dismiss the claims against him and to strike Plaintiffs' request for punitive damages. (Doc. 17.) Plaintiffs responded. (Docs. 19, 20, 21, 37.) This matter is now ripe for the Court's adjudication.

**STANDARDS**

Federal Rule of Civil Procedure 8(a)(2) provides that a claimant must plead "a short and plain statement of the claim." On a motion to dismiss a complaint, the Court limits its consideration to "the well-pleaded factual allegations." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The factual allegations in the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this plausibility determination, the Court must accept the factual allegations as true; however, this "tenet . . . is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers mere

"labels and conclusions" is therefore insufficient. *Twombly*, 550 U.S. at 555.

## DISCUSSION

To say that the Complaint is not a model of clarity would be an extreme understatement. Nevertheless, the Court has attempted to parse out the major issues as set forth below.

### I. The Issue of Capacity

At the outset, the Court notes that while Seminole County is named as a Defendant, all of the allegations in the body of the Complaint are made against the Sheriff in his official capacity as a representative of the County. The Court recognizes that the case law is not entirely clear on: (1) whether a Sheriff sued in his official capacity is a representative of the Sheriff's Department or the County; and (2) whether the Sheriff or the County is the proper defendant in a § 1983 *Monell* claim. *See Brown v. Neumann*, 188 F.3d 1289, 1290 n.2 (11th Cir. 1999) (recognizing but not resolving the conflicting precedent). However, the Court is persuaded that the County is the proper Defendant to this suit, as the Sheriff ultimately stands in the stead of the County as its policymaker. *See Lucas v. O'Loughlin*, 831 F.2d 232, 235 (11th Cir. 1987). Accordingly, Plaintiffs shall direct all official capacity claims against the County in their amended complaint.[2]

Furthermore, while the Complaint generally alleges that the deputies are sued in their individual capacities (Doc. 1, p. 1), it also names the deputies in their official capacities in certain counts. The Court notes that all official capacity suits are

[2] Though largely semantic—as the Sheriff is the representative of the County and the Sheriff's counsel will likely also be defending the County—Plaintiffs should not replead against the Sheriff in his official capacity and should leave the County as the only remaining entity Defendant. Accordingly, the Court grants Plaintiffs leave to perfect service upon the County if they have not already done so.

essentially those against the County itself. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). Therefore, all of the official capacity claims are *Monell* claims which must be predicated on a custom or policy of the County. The Court thus expects the amended complaint to name only the County in any official capacity claims. Any claims brought against Deputies Clutter, Ducharme, and Pratt in the amended complaint should be explicitly identified as individual capacity claims and will be construed as such. *See Colvin v. McDougall*, 62 F.3d 1316, 1318 (11th Cir. 1995) ("We stress as much as we can that the difference between an official capacity suit and an individual capacity suit is a big difference. And, in general, plaintiffs have a duty to make plain who they are suing." (citation omitted)).

**II. Official Capacity Claims Against the County**

As discussed above, the Court considers the County to be the proper Defendant for all official capacity claims in the Complaint. Thus, for ease of reference, the Court will refer only to the County in analyzing such claims (even though the Complaint actually names the Sheriff throughout).

**a. Failure to Train/Supervise (Counts III, IV, IX & X)**

Counts III and IV are brought by Wilds and Byrd, respectively, against the County. (Doc. 1, ¶¶ 69–85, 86–101.) They are § 1983 excessive force claims based on the theories of failure to implement adequate policies on the use of force (including the use of Tasers),[3] failure to train and supervise deputies about such policies,[4] and failure

[3] Count X (mislabeled as Count IX but actually the tenth count) is entitled "Constitutional Deprivation Due to Failure to Train Against Seminole County Sheriff Eslinger." (Doc. 1, p. 26.) While no reference is made to § 1983 in the count, both the County via the Sheriff (Doc. 17, p. 13) and Plaintiffs (Doc. 21, pp. 10–11) refer to it as a

to discipline deputies for using excessive force. (*Id.* ¶¶ 71, 76, 77, 83).

Plaintiffs have failed to allege facts plausibly supporting these theories. While the explanations of the County's alleged failures are detailed, they constitute mere conclusory statements. The actual factual allegations are all directed toward the deputies' conduct and say nothing about what the County did or did not do.

For instance, the Complaint does not allege other instances of excessive force establishing the sort of persistent or widespread pattern that might have put the County, through the Sheriff, on notice of a problem with existing training, supervision, and disciplinary policies. *See, e.g.*, *Gold v. City of Miami*, 151 F.3d 1346, 1350–51 (11th Cir. 1998); *see also Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). Isolated incidents are often not enough to confer liability on a government entity because such claims typically (and improperly) sound in respondeat superior. *See, e.g.*, *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 406–12 (1997); *City of Canton v. Harris*, 489 U.S. 378, 388–92 (1989).

Without some alleged connection between the deputies' violations and the County's policies or customs, the Court cannot allow the claims against the County to

---

§ 1983 claim, and the Court therefore construes it as such. Like Counts III and IV, Count X is premised on a theory of failure to train and supervise the deputies in the use of force, particularly with regard to the use of Tasers. (Doc. 1, ¶¶ 127–29.) Accordingly, the Court finds that it is duplicative of those counts and thus due to be dismissed.

[4] Count IX (mislabeled as Count VIII but actually the ninth count) is a negligent hiring, training, supervision, and retention claim against the Sheriff in his official capacity. (Doc. 1, ¶¶ 121–25.) The County, via the Sheriff, argues that it is unclear whether this claim is predicated on state or federal law. (Doc. 17, p. 11.) The count is indeed devoid of reference to authority, though it mentions "constitutional deprivations" and seeks attorney's fees pursuant to 42 U.S.C. § 1988. (Doc. 1, ¶ 125.) Plaintiffs' response further indicates that it is intended to be a § 1983 claim for failure to train or supervise. (Doc. 21, pp. 10–11, 16 ("Plaintiffs have not brought any claims founded in state law.").) The Court therefore construes it as such and accordingly finds that this count is duplicative of the other failure-to-train/supervise counts. It is thus due to be dismissed.

proceed. Plaintiffs' response avers that the County "repeatedly endorsed a policy of using excessive force during arrests" and had a "policy, custom, or practice of allowing, authorizing, or ratifying the use of excessive force against arrestees and/or pre-trial detainees." (Doc. 21, p. 12.) However, Plaintiffs' Complaint does not allege any facts in support of these bare conclusory statements. The "no set of facts" standard which Plaintiffs reference (*id.* at 13 (citing *Conley v. Gibson*, 355 U.S. 41 (1957))) is no longer good law in light of the pleading standards articulated in *Twombly* and *Iqbal*. The Court does not expect Plaintiffs to have access to all of the facts that they will ultimately need to prove their claims, but Plaintiffs must nonetheless plead enough facts to raise their claims above the speculative level. Simply alleging the deputies' actions and then baldly stating that the County's failures caused those actions is not enough without some interstitial facts.

Therefore, these counts are due to be dismissed. In their amended complaint, Plaintiffs should plead facts which plausibly suggest that the actions of the deputies were caused in part by the County's failures and that the County, through the Sheriff, was aware that the failures needed to be remedied.

    **b.    Other Official Capacity Claims: False Arrest/Imprisonment (Counts V & VI), Conspiracy (Count VII) & Malicious Prosecution (Count XI)**

All other official capacity claims raised in the Complaint (Counts V, VI, VII, and XI) are similarly deficient. For the same reasons discussed *supra*, the Court finds that Plaintiffs do not sufficiently allege that any of the actions of the deputies in committing the alleged false arrest/imprisonment, conspiracy, and malicious prosecution were caused by the County's failures. Accordingly, those claims are also due to be dismissed.

### c. Punitive Damages

All of the counts against the County include requests for punitive damages. (*See, e.g.*, Doc. 1, p. 16.) The County, via the Sheriff, moves to strike these punitive damages requests. (Doc. 17, p. 17.) Government entities (as well as sheriffs sued in their official capacities) are immune from punitive damages under § 1983. *Colvin v. McDougall*, 62 F.3d 1316, 1219 (11th Cir. 1995); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Accordingly, the motion to strike those requests is due to be granted. Plaintiffs shall not replead their requests for punitive damages in any counts against the County in their amended complaint.

## III. Individual Capacity Claims Against the Deputies[5]

As discussed above, the Court dismisses all official capacity claims as being inadequately pled. Therefore, the Court analyzes all remaining claims against the deputies in their individual capacities only (even though some claims also name them in their official capacities and some claims do not state the capacity at all).

### a. Excessive Force (Counts I & II) & False Arrest/Imprisonment (Counts V & VI)

Count I is Wilds' § 1983 excessive force claim against Deputies Ducharme and Clutter. (Doc. 1, ¶¶ 52–59.) Count II is the same claim brought by Byrd against all three deputies. (*Id.* ¶¶ 60–68.) Both counts are predicated on Fourth, Eighth, and Fourteenth Amendment violations. (*Id.* ¶¶ 58, 67.)

---

[5] As to the individual capacity claims, only Deputy Clutter raised the issue of qualified immunity in his motion to dismiss. (Doc. 35, pp. 10–12.) Without commenting on the merits of such a defense, the Court declines to consider that issue at this time because the pleadings are still very much unsettled and the Complaint is unclear as to whether the deputies are sued in their individual capacities in many of the counts. The Court therefore denies that part of Deputy Clutter's motion without prejudice and will consider the qualified immunity defense as it applies to any of the individual deputies if and when Defendants raise it in response to the amended complaint.

Similarly, Count V is Wilds' § 1983 false arrest and false imprisonment claim against Deputies Ducharme and Clutter. (*Id.* ¶¶ 102–07.) Count VI is the same claim brought by Byrd against all three deputies. (*Id.* ¶¶ 108–13.) Both counts are predicated on Fourth and Fourteenth Amendment violations. (*Id.* ¶¶ 106, 112.)

The deputies submit that the Fourteenth Amendment claims are duplicative of the Fourth Amendment claims. (Doc. 35, p. 6.) The Court finds that the references in the Complaint to the Fourteenth Amendment are made only insofar as that Amendment incorporates the provisions of the Fourth Amendment to apply to the states.[6] *See Payton v. New York*, 445 U.S. 573, 576 (1980). Therefore, the Fourteenth Amendment claims as pled are duplicative of the Fourth Amendment claims and are due to be dismissed.

The deputies also assert that the Eighth Amendment[7] claims fail because Plaintiffs were not incarcerated at the time of the incident. (Doc. 18, p. 8.) Indeed, the Eighth Amendment only applies to people who have already been convicted. *D'Aguanno v. Gallagher*, 50 F.3d 877, 879 n.2 (11th Cir. 1995); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1572 (11th Cir. 1985). As such, it is inapplicable in the instant case, and the Eighth Amendment claims must be dismissed.

The Court finds that the Fourth Amendment claims are otherwise adequately pled. Those claims shall proceed against the deputies in their individual capacities only.

---

[6] Defendants suggest that Plaintiffs may have intended to state an equal protection claim (Doc. 16, p. 4), which is not supported by the text of the Complaint and is not adequately pled in any case.

[7] The Complaint also makes a single passing reference to Fifth Amendment violations. (Doc. 1, ¶ 2.) As no federal acts are alleged (*see* Doc. 18, p. 8), any Fifth Amendment claims are due to be dismissed. Plaintiffs shall omit any reference to Fifth Amendment violations in the amended complaint.

**b. Conspiracy (Count VII)**

Count VII is a § 1983 conspiracy count against the three deputies and the County. (Doc. 1, ¶¶ 114–18.) As discussed above, any claims against the County are dismissed as inadequately pled. Therefore, the Court will only consider the claims against the deputies in their individual capacities.[8]

A plaintiff must demonstrate that the defendants "reached an understanding" to deny the plaintiff's constitutional rights. *Bailey v. Bd. of Cnty. Comm'rs*, 956 F.2d 1112, 1122 (11th Cir. 1992) (citation and internal quotation marks omitted). "[T]he linchpin for conspiracy is agreement, which presupposes communication." *Id.* "The plaintiff does not have to produce a smoking gun . . . , but must show some evidence of agreement between the defendants." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283–84 (11th Cir. 2002) (citations and internal quotation marks omitted).

While Plaintiffs are not required to prove up their conspiracy claim at this juncture, they must allege enough facts that plausibly suggest that Defendants reached an agreement to violate their constitutional rights. The Court understands Plaintiffs to allege two separate conspiracies: one to violate their rights on the scene of the arrest (Doc. 1, ¶ 115), and a second to cover up the violations and maintain a "code of silence" (*id.* ¶ 116).

As to the first conspiracy, the Court finds that the Complaint plausibly gives rise to the inference that Deputies Clutter and Ducharme reached an agreement to

---

[8] As the Court does not consider this claim to be made against any Defendants in their official capacities, the Court need not consider Defendants' arguments about the intracorporate conspiracy doctrine, which provides that it is not possible for an entity to conspire with its own agents. *See Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000). If the amended complaint implicates the intracorporate conspiracy doctrine, Defendants may raise the issue again and the Court will consider it then.

unlawfully detain Plaintiffs. The fact that the two deputies, driving in separate vehicles, worked together to maneuver Plaintiffs' car to the side of the road (*id.* ¶¶ 27–29) suggests that they were in communication and working toward a shared goal, supporting the conspiracy claim.

However, Plaintiffs do not plausibly suggest that Deputy Pratt was of the same understanding. In fact, the Complaint alleges that Deputy Pratt arrived as backup because Deputies Clutter and Ducharme falsely advised that Plaintiffs were being noncompliant. (*Id.* ¶ 34.) How then could Deputy Pratt be involved in the conspiracy to violate Plaintiffs' rights if he arrived on the scene under false pretenses? If he were part of the other deputies' plan to victimize Plaintiffs, why would Deputy Pratt himself have been put in the line of fire (*id.* ¶ 37)? Therefore, these allegations do not plausibly give rise to the inference that Deputy Pratt was part of the conspiracy to violate Plaintiffs' rights on-scene.

As to the second conspiracy, Plaintiffs allege that Defendants acted in concert to cover up the on-scene brutality by falsifying police reports against them in order to maintain a "code of silence."[9] (Doc. 1, ¶¶ 116–18.) As above, while there are factual allegations giving rise to the notion that Deputies Clutter and Ducharme were working together, there are nothing but conclusory allegations leveled against Deputy Pratt.

"Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 556–57. All the Complaint says about Deputy

[9] As discussed above, the Court finds that Plaintiffs have not sufficiently pled a conspiracy claim against the County. If Plaintiffs intend to replead such a claim against the County (and can do so in good faith, *see supra* note 8), it will have to meet the standards of a *Monell* claim and allege facts indicating that the County's customs or policies permitted or encouraged such a "code of silence."

Pratt is that he allegedly filed the same "false" police reports as Deputies Clutter and Ducharme. Nothing suggests that he was in communication and somehow reached an agreement with those deputies between the time of the arrest and the time the police reports were filed. In fact, taking as true Plaintiffs' allegation that Deputy Pratt came on the scene with the falsely induced impression that Plaintiffs were resisting arrest before his arrival, the far more plausible explanation is that Deputy Pratt was simply doing his job by filling out the reports with the only knowledge to which he was privy.[10]

Thus, only the conspiracy claims against Deputies Clutter and Ducharme in their individual capacities shall proceed. The claims against Deputy Pratt are due to be dismissed.

**c. Failure to Intercede (Count VIII)**

Count VIII (mislabeled as the second Count VII but actually the eighth count) is a one-paragraph § 1983 claim against Deputy Pratt for failure to intercede on their behalf during the incident. (Doc. 1, ¶ 120.) Deputy Pratt's motion to dismiss did not address this claim, and it shall therefore proceed against him in his individual capacity only.

**d. Malicious Prosecution (Count XI)**

Count XI (mislabeled as Count X but actually the eleventh count) is entitled "False Police Reports." (Doc. 1, p. 28.) It is brought against Deputies Ducharme and Clutter, as well as the County. (*Id.*) As discussed above, all claims against the County are dismissed as inadequately pled. Therefore, the Court will consider this claim against the deputies in their individual capacities only.

Defendants contend that there is no authority supporting a "false police reports"

---

[10] Additionally, Deputy Pratt is not sued with the other Defendants in the "false police reports" claim (*see* Doc. 1, p. 28), suggesting that even Plaintiffs do not believe that he filled out the reports falsely as part of a cover-up.

cause of action. (Doc. 16, p. 6.) The Court is also unaware of any such cause of action; however, the Court gathers from Plaintiffs' response that they intended this count to set forth a cause of action for § 1983 malicious prosecution. (Doc. 21, pp. 14–15.)

"To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; *and* (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." *Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010). The elements of the common law tort of malicious prosecution in Florida are: (1) a proceeding commenced against the plaintiff; (2) the defendant was the legal cause of the proceeding; (3) the proceeding terminated in the plaintiff's favor; (4) there was no probable cause for the proceeding; (5) the defendant acted with malice; and (6) the plaintiff suffered damages as a result of the proceeding. *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 946 (11th Cir. 2008).

Here, Plaintiffs allege that: (1) charges were brought against them; (2) the deputies caused the charges to be brought against them by filing false police reports; (3) the charges were ultimately dropped; (4) there was no probable cause; (5) the deputies acted maliciously; (6) they suffered damages; and (7) their Fourth Amendment rights were violated. (Doc. 1, ¶¶ 3–4, 45–47, 133.) These allegations make out a claim for malicious prosecution against Deputies Clutter and Ducharme. This count shall proceed only as to Deputies Clutter and Ducharme in their individual capacities.[11]

[11] If Plaintiffs intend to replead a malicious prosecution claim against the County (and can do so in good faith), it will have to meet the standards of a *Monell* claim and allege facts indicating that the County's customs or policies permitted or encouraged the filing of false police reports.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. All Fifth and Eighth Amendment claims are **DISMISSED WITH PREJUDICE**. All Fourteenth Amendment claims are **DISMISSED WITHOUT PREJUDICE**.

2. Defendant Sheriff Eslinger's Motion to Dismiss and Strike (Doc. 17) is **GRANTED**. All claims against the County and the Sheriff are **DISMISSED WITHOUT PREJUDICE**. The requests for punitive damages against the County and the Sheriff are **STRICKEN** and should not be repled.

3. Defendant Ducharme's Motion to Dismiss Counts I, II, V, VI, VII and X of Plaintiffs' Complaint and Demand for Jury Trial (Doc. 16), Defendant Pratt's Motion to Dismiss (Doc. 18), and Defendant Christopher Clutter's Motion to Dismiss and Memorandum of Law (Doc. 35) are **GRANTED IN PART AND DENIED IN PART**.

   a. The motions are **GRANTED** as to all official capacity claims, which are **DISMISSED WITHOUT PREJUDICE**.

   b. The motions are **DENIED** as to the following claims, which shall proceed against Deputies Clutter and Ducharme in their individual capacities only: Counts I and II (excessive force), V and VI (false arrest/imprisonment), VII (conspiracy), and XI (malicious prosecution).

   c. The motions are **DENIED** as to the following claims, which shall proceed against Deputy Pratt in his individual capacity only: Counts II (excessive force), VI (false arrest/imprisonment), and VIII (failure

      to intercede). Count VII (conspiracy) is **DISMISSED WITHOUT PREJUDICE** as to Deputy Pratt.

   d. The motions are **DENIED** insofar as they seek to strike Plaintiffs' requests for attorney's fees and declaratory relief.

   e. The motions are **DENIED WITHOUT PREJUDICE** insofar as they seek to raise a qualified immunity defense.

4. Plaintiffs have leave to file an amended complaint consistent with the strictures of this Order[12] on or before Wednesday, **May 1, 2013**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on March 29, 2013.

ROY B. DALTON JR.
United States District Judge

---

[12] Plaintiffs are, of course, free to bring whichever claims they choose in the amended complaint and to organize those claims in whichever manner they see fit. For clarity's sake, however, the Court would expect to see the following claims in the amended complaint (based on the facts as pled in the original Complaint):

(1) a *Monell* official capacity § 1983 Fourth Amendment excessive force claim by both Plaintiffs against the County, on a failure-to-train/supervise theory;
(2) an individual capacity § 1983 Fourth Amendment excessive force claim by both Plaintiffs against Deputies Clutter and Ducharme;
(3) an individual capacity § 1983 Fourth Amendment excessive force claim by Plaintiff Byrd against Deputy Pratt;
(4) an individual capacity § 1983 Fourth Amendment false arrest/imprisonment claim by both Plaintiffs against Deputies Clutter and Ducharme;
(5) an individual capacity § 1983 Fourth Amendment false arrest/imprisonment claim by Plaintiff Byrd against Deputy Pratt;
(6) an individual capacity § 1983 conspiracy claim by both Plaintiffs against Deputies Clutter and Ducharme;
(7) an individual capacity § 1983 malicious prosecution claim by both Plaintiffs against Deputies Clutter and Ducharme; and
(8) an individual capacity § 1983 failure-to-intercede claim by both Plaintiffs against Deputy Pratt.

Copies:

Counsel of Record